JOHANNA ANDERSON v. FRANK A. SEYMOUR and Another.[1]

December 8, 1897.

Nos. 10,772—(168).

**Bank—Laws 1895, c. 145—Constitution, art. 4, §§ 27, 33; art. 9, § 13— Obligation of Contracts.**

Laws 1895, c. 145 (an act entitled "An act to revise the laws relating to banks of discount and deposit"), is not unconstitutional upon the ground that it does not meet the requirements of article 9, § 13, of our state constitution, or upon the ground that it impairs the obligation of the contract between banks theretofore existing and the state, or upon the ground, if it be held applicable to such banks, that it impairs the contract obligations between its stockholders and those creditors whose claims arose prior to the day such law took effect, or upon the ground that due process of law was not provided for in insolvency proceedings against banking corporations, or upon the ground that the title of the act did not conform to article 4, § 27, or upon the ground that the act itself is in violation of article 4, § 33, of the constitution.

**Same—Application to Existing Banks.**

By section 29 of chapter 145, supra, the provisions thereof are made applicable to banks existing and doing business under the laws of this state at the time said statute went into effect.

**Same—Insolvent Banks—Laws 1897, c. 341.**

Laws 1897, c. 341, does not apply to insolvent banking corporations for which receivers have been appointed under Laws 1895, c. 145, § 20.

**Same—Liability of Stockholders—G. S. 1894, § 2501.**

Receivers appointed under the provisions of section 20, supra, can enforce, in proper cases, the double liability imposed upon stockholders by G. S. 1894, § 2501.

**Same—Enforcement by Receiver—Right of Creditors under G. S. 1894, c. 76—Practice.**

Where receivers of insolvent banking corporations have been appointed in accordance with the provisions of section 20, supra, they have the primarily exclusive right to institute proceedings to enforce the stockholders' liability. Creditors cannot be permitted to supersede receivers in the exercise of this right, without first showing good cause, and obtaining leave of the court in which the insolvency proceedings are pending. To this

[1] Reported in 73 N. W. 171.

extent the remedies of receivers under said section 20, and those of creditors under G. S. 1894, c. 76, are concurrent. The proceeding by either is properly by supplemental complaint in the original action.

Action in the district court for Ramsey county by a creditor of the insolvent Bank of Minnesota in her own behalf and in behalf of the other creditors who should join in the action against the receivers of that bank appointed upon the petition of the bank examiner of Minnesota, and against the stockholders of the bank, to enforce the constitutional liability of the stockholders. Certain defendant stockholders demurred to the complaint. From an order sustaining the demurrers, Otis, J., plaintiff appealed. Affirmed.

*Enoch Johnson* and *W. S. Dwinnell*, for appellant.

Laws 1895, c. 145, is unconstitutional because it does not contain the requirements of Const. art. 9, § 13. At the time of the adoption of the constitution the people of Minnesota territory were just emerging from a disastrous financial panic, caused largely by the use of inflated currency by private banks. It was natural then that state banks should be demanded by the people. But their benefits would not be secured unless the constitution compelled the enactment of such safeguards as would protect their currency. The constitutional convention decided to permit state banks, but to place certain limitations upon the power of the legislature to create them. The constitution of Wisconsin compelled any general banking law to be submitted to a general vote of the people, but the constitution of Minnesota in effect prohibited the legislature from passing any other than a general banking law. Such law must regulate bank issues and be adopted by a two-thirds vote of the legislature. This in effect prohibited the passage of any other than a general banking law which must regulate bank issues and must be passed by a two-thirds vote. Were the banks to be established under the general law to be passed to have the right to issue or only the right to discount and receive deposits, or were they to be banks having all these rights? If the last then the limitations on the legislature applied to laws enacted for banks of discount and deposit, as well as to laws enacted for banks of issue. Any law regarding banks of discount and deposit must conform to the requirements of Const. art. 9, § 13. If the constitution

did not contemplate that banks organized under a law embodying its restrictions should be banks of issue, why did section 13 prohibit the suspension of specie payments or require provision to be made for the security of bill holders?

If a constitutional bank may be a bank of issue, does it possess the other functions of banking as well? Suppose there were no other restrictions than those contained in the first line of section 13, art. 9, supra. The plain meaning of that line would be that a general banking law must be passed by a two-thirds vote. The word "general" must refer either to the character of the bank or the character of the law to be passed. If the word refer to the character of the bank, there can be no question as to the scope of the bank to be organized; that it must be a bank of three functions. If the word refer to the character of the law, then any banking law which is not general is prohibited by the constitution.

Is the law of 1895 a special law? If the legislature were compelled by the constitution to enact a general law along certain lines providing for banks of discount, deposit and circulation, would not a law providing for banks of discount along entirely different lines be a special act? When the nature of a subject to be legislated upon possesses three attributes, a general law pertaining thereto must make provision for all those attributes. A law which endeavors to segregate one of those attributes and make provision therefor is a special law. The only exception to this rule is where there is a reason suggesting the necessity of different legislation. State v. Cooley, 56 Minn. 540, 551. What necessity requires the classification of banks into banks of deposit and discount and banks of issue, discount and deposit? Moreover the constitution by giving to the legislature the right to pass a general law thereby prohibited it from enacting any but a general law.

Immediately after the adoption of the constitution the legislature enacted a law complying with its provisions and providing for banks of a general character and having the right of discount and deposit. Laws 1858, c. 32. A bank organized under chapter 33 of the General Statutes possesses the three functions of a bank. Dana v. Bank, 4 Minn. 293 (385). Hence the law imposed by the constitution was one authorizing banks of discount, deposit and circulation.

And the restrictions of the constitution cannot be avoided simply by enacting a law failing to provide for one of the three functions. Therefore Laws 1895, c. 145, is unconstitutional. Every institution incorporated for the primary purpose of receiving deposits and discounting paper possesses the incidental power to issue, and therefore must be within the restrictions of the constitution. At the time of the adoption of the constitution bank-paper was not a legal tender, it was merely their due bill or promise to pay. In many places on the frontier, especially at that time, the circulating medium was furnished by the due bills of some lumber, iron or other company. The right to issue a due bill or demand note is no special privilege, but is inherent in every natural person. If express authority is necessary to warrant the issue of notes as a medium of exchange, then there never was a note legally issued by any state bank in Minnesota. No law authorizing such issue has ever been enacted in Minnesota. For nearly ten years after the law of 1858 banks in this state issued bank notes. If that was a lawful exercise of power, then it should be the same now, for the same powers are conferred on banks of discount and deposit by Laws 1895, c. 145, § 3, subd. 7, as were conferred on banks by the law of 1858. Subdivision 3 of section 13 of art. 9 of the constitution also clearly implies that all banks have the right to issue notes. The language clearly declares that all banks possess the power to issue and the liability should attach to those which avail themselves of the power.

But if this court is to adhere to its decision in International v. American, 62 Minn. 501, then we contend that if the law of 1895 is to be held applicable to the Bank of Minnesota, the law is unconstitutional. Chapter 33 of the General Statutes was originally enacted in 1858, Laws 1858, c. 32. The title of the act was "An act to authorize and regulate the business of banking." Thirty of its forty-five sections pertain directly to the issue of circulating notes, and the powers given in the original act were identical with the powers given to the bank in question, save that in 1876 the power was given to traffic in promissory notes, etc. The power to issue circulating notes is given by section 4 (G. S. 1894, § 2484). All banks then organized under chapter 33 have the power to issue notes, and the grant of

such power constitutes a contract between the state and the stockholders of such bank which cannot be impaired by legislation. But if the law of 1895 is to be held applicable to all banks doing business in the state, then the right to issue circulating notes has been taken away, if not expressly then by necessary implication. See section 29. But if this right has been taken away, under the Dartmouth College case the contract obligation with the state has been impaired and such an act transcends the power of the legislature. To contend that this privilege has been practically taken away by the federal bank tax is to invoke the doctrine of non-user. But a statute cannot be repealed by mere failure to operate under it. Nothing short of a statute can repeal a statute. Potter's Dwarris, St., 154; White v. Boot, 2 T. R. 274. If the federal tax were removed the right of issue becomes valuable and the legislature has no power to take it away. If the legislature can provide for banks of a kind not intended by the constitution, it cannot take away such privilege from existing banks. State v. Knoop, 16 How. 369; Planters v. Sharp, 6 How. 301. Section 5 of the act of 1895 provides for but a single liability of stockholders. As to creditors of the bank who were such prior to that act the law of 1895 is invalid. Hawthorne v. Calef, 2 Wall. 10, 22, 23; 3 Thompson, Corp. § 3040.

The authority given to the superintendent of banks by section 20 of the act of 1895 to take summary proceedings against banks is clearly in violation of Const. art. 1, §§ 2, 7. In the national bank act similar authority given to the comptroller of the currency is carefully guarded. See R. S. (U. S.) §§ 5226, et seq. The act of 1895 is a menace to rights guarantied by the constitution. State v. Billings, 55 Minn. 467, 473; Bardwell v. Collins, 44 Minn. 97; Wilson v. Red Wing, 22 Minn. 488; Baker v. Kelley, 11 Minn. 358 (480).

The act of 1895 is unconstitutional because the subject of the act is not embraced in the title. By prior decisions of the court the right to issue is a special privilege or artificial right which must be expressly conferred upon banks and was conferred by chapter 33 of the General Statutes, while the right to receive deposits and to discount is a natural right. A statute then which

by its title aims to regulate institutions exercising only the natural right to discount and to receive deposits would give no information that it was likewise intended to diminish the liability of stockholders in banks having the right to issue. Mississippi v. Prince, 34 Minn. 79.

The act of 1895 is inapplicable to the Bank of Minnesota and to banks existing prior to its passage, so far as the liability of stockholders in such banks and its enforcement are concerned. The language of section 5 of that act refers only to banks organized under its provisions. Hence the liability of the stockholders of the Bank of Minnesota is the same as before the act of 1895. But under the decision in Minneapolis v. City Bank, 66 Minn. 441, receivers have no power to enforce stockholders' liability unless expressly given power by statute. The authority given by section 20 of the act of 1895 must be limited to receivers of banks organized under that act, unless the language of the act clearly shows the contrary intention. But there is no such language in the act. How can these receivers successfully contend that the liability of these stockholders is double when their only authority to proceed against these stockholders is this act of 1895?

No authority has been found holding that when power to enforce this liability is given to a receiver it is exclusive in him. In New York the intent of the act of 1852 was to take away from the creditors the right to sue the stockholders and devote the fund obtained from payment of the liability of stockholders to the payment of debts pro rata. Walker v. Crain, 17 Barb. 119. But the object sought in New York had already been secured by chapter 76 of the General Statutes. See Hewett v. Adams, 50 Me. 271, 282.

The language of Laws 1897, c. 341 (an act passed immediately after the failure of several large banks), that, if no action by creditors against stockholders of an insolvent corporation shall have been begun under chapter 76 within six months after the failure, it shall be the duty of the assignee or receiver to begin such action, must have been intended to apply to banks. There is no reason for extending its benefits to other corporations and denying them to banking corporations. The language used indicates that unless creditors exercise their right to begin such action within six months

they lose the right. The law of 1897 went into effect before this case was argued in the lower court. It is an act regulating procedure. Such an act has a retrospective application, affecting past and pending transactions as well as those in the future. Sutherland, St. Const. § 482; Tompkins v. Forrestal, 54 Minn. 119; Pritchard v. Savannah, 87 Ga. 294; Hepburn v. Curts, 7 Watts, 300; McLimans v. City, 63 Wis. 596; People v. Tibbets, 4 Cow. 384; Kimbray v. Draper, L. R. 3 Q. B. 160.

*Millard F. Bowen* and *John Hay*, attorneys for certain creditors in a similar case against the stockholders of the City Bank, by consent filed a brief for the appellant.

The liability of the defendant stockholders to creditors is in an amount equal to double the amount of stock owned by each. This liability is that provided in Const. art. 9, § 13, and G. S. 1866, c. 33, § 21 (G. S. 1894, § 2501). Const. art. 9, § 13, has not been repealed or amended, and state banks can be organized in Minnesota only by conforming to its provisions. There is no other provision in the constitution regulating banking business or banks. Banks of discount and deposit are expressly excluded from the terms of Const. art. 10, § 1.

In the territory of Wisconsin incorporated companies were prohibited from receiving deposits, making discounts or issuing notes, unless authorized by law. Wis. Statutes, 1839, p. 145, § 1. This law was in force until 1849. In that year it was continued in force in Minnesota by virtue of section 12 of the act establishing the territorial government of Minnesota. The Wisconsin act became Laws of Minnesota 1849, c. 54. The law was repealed by the repealing act of R. S. 1851, c. 137, § 1. Revised Statutes 1851 contained no reference to banks except in section 56 of chapter 39 and section 21 of chapter 40. These chapters were copied verbatim from Wisconsin and, in accordance with the Wisconsin law, prohibited banks. After this repeal the territory of Minnesota had no banking law. Wisconsin, after a popular vote in favor of a banking law, adopted a general banking law pursuant to Wis. Const. art. 11, § 4. Wis. Laws 1852, c. 479. This is the act referred to in the debates of our constitutional conventions. Many of the provisions of this act were incorporated in the Minnesota constitution and in

Minn. Laws 1858, c. 32. For the construction of the Wisconsin constitution on this subject, see State v. Hastings, 12 Wis. 596.

If the legislature takes any action, it must pass a general banking law containing the constitutional restrictions. But if it can pass a special law, such law must be in accordance with the constitutional limitations.

Laws 1895, c. 145, is unconstitutional not only because it does not comply with the requirements of the constitution, but because it is class legislation. It is not the less a special law because it applies to many corporations to be organized under it. State v. Cooley, 56 Minn. 540, 549. Placing banks of discount and deposit in a class by themselves is not a constitutional classification because not based upon substantial distinctions. Mere subtraction of powers and functions does not and cannot make another class. Classification must be based upon some natural reason—some difference in situation and circumstances suggesting the necessity of different legislation. The banks of the constitution have all the power of banks organized under the law of 1895 and the additional right to issue notes. Such difference does not suggest the propriety of different legislation as to the liability of stockholders. The attempt in section 29 to make the law apply to all banks is proof that the provisions of the act do not necessarily relate to particular members of the class but apply to all banks.

The provision of Laws 1858, c. 32, § 10, that persons "may establish offices of discount, deposit and circulation and become incorporated" has never been repealed or amended, and is in force to-day, unless changed by the law of 1895. G. S. 1866, c. 33, § 10; G. S. 1894, § 2490. The section was amended in 1881, 1883, 1887 and 1893, but the provision for the incorporation of banks of "discount, deposit and circulation" was not modified. That provision has been the law of this state for nearly forty years. The powers of such a bank were contained in Laws 1858, c. 32, § 13; G. S. 1866, c. 33, § 13; G. S. 1894, § 2493. This section was amended in 1869 and 1876. It has not been repealed or affected unless by the law of 1895, and we contend it has not been repealed by that law. Chapter 33 of the General Statutes is a general banking act. That is the construction of this court. Dana v. Bank, 4 Minn. 291 (385);

Farmers v. Baldwin, 23 Minn. 198; International v. American, 62 Minn. 501.   That was the construction of the legislature from 1858 to 1895.   A construction adopted and acquiesced in for so long by two departments of government ought not to be questioned.

In November, 1892, Const. art 4, § 33, in its present form was adopted by popular vote, and by proclamation in the following month became part of our law.   In March, 1893, section 10 of chapter 33 was amended (G. S. 1894, § 2490), but otherwise the general law was left, including section 13 (G. S. 1894, § 2493).   There was then no other law on the subject of banking on the statute book of Minnesota.   The question concerning the constitutionality of the law of 1895 under Const. art. 4, § 33, is not whether that law was applicable to the subject of banking, but whether that general law could have been made applicable.   To sustain the constitutionality of this law of 1895 the court must determine (1) that the general law is not applicable, and (2) that it cannot be made applicable. The general law which was applicable from 1858 to 1895 must be taken to be no longer applicable as a general law, so that uniformity on the subject of banking can no longer be accomplished by it. Except in one particular it was deemed applicable in the year 1893. If applicable then why was it not applicable in 1895?   But assuming that in 1895 the general law was no longer applicable, why could not the general law have been made applicable when section after section of the provisions of the general law were copied into the law of 1895?   All the provisions as to discounting, regulations as to banking, supervision, and the provision for the enforcement of liability of stockholders by a receiver which were put in the law of 1895 might have been inserted in the general law, because that law provides for the business of banking by discounting and receiving deposits.   But the provision in the 1895 law fixing the liability of stockholders could not have been inserted, because a general law could not establish a liability different from that required by the constitution and could only be inserted in a special law.

Chapter 33 of the General Statutes is the charter of every bank organized under its provisions as much as if that chapter were a special act for such bank.   State v. Knoop, 16 How. 369.   A bank

so organized is a bank of circulation authorized to issue notes as provided in that chapter. See Arthur v. Willius, 44 Minn. 409; Densmore v. Shepard, 46 Minn. 54; First Nat. v. Winona, 58 Minn. 167; Anchor v. Columbia, 61 Minn. 510; St. Paul v. Minneapolis, 62 Minn. 448.

As to the distinction between "powers" and "privileges" see International v. American, supra; State v. Minnesota, 40 Minn. 213.

Unless the charter contains a reservation of power, the charter is deemed an executed contract between the state and the corporators, and the legislature cannot repeal, impair or alter such charter against the consent or without default of the corporation, judicially ascertained. Miller v. People, 15 Wall. 478; International v. American, supra. The Minnesota constitution reserved no such power to the legislature, although the constitution of Wisconsin and other states reserved such power in unmistakable terms. There is no reservation in the statute similar to the reservation construed in Miller v. People, supra; Sinking Fund Cases, 99 U. S. 700; Bailey v. Hollister, 26 N. Y. 112; U. S. v. Union Pacific, 160 U. S. 1. But in some cases Minnesota reserved the right to amend charters. See an unexecuted power construed as a mere license. Pearsall v. Great Northern, 161 U. S. 646.

The franchise to issue notes is not lost by non-user. Minnesota v. Melvin, 21 Minn. 339. The forfeiture must be judicially ascertained. State v. Minnesota, 36 Minn. 246. The forfeiture could not be adjudged except to protect the public when misuser or non-user threatened a substantial injury to the public. State v. Minnesota, supra, and the franchise could not be forfeited if the state consented to the act of misuser or non-user. State v. St. Paul, 35 Minn. 222.

G. S. 1866, c. 33, § 13 (G. S. 1894, § 2493), enumerated some of the powers of banks organized under that chapter. A prerequisite to beginning business was the deposit of securities with the state auditor to authorize the issue of notes. The law thereby required a bank to issue notes. Laws 1869, c. 85, amended this section by inserting in place of this requirement a proviso that nothing in the chapter shall be construed to require such deposit of securities

unless application shall be made to the auditor for such circulating notes. This amendatory law was recited in the articles of incorporation of the City Bank. Section 24 was amended by this law of 1869 to harmonize with this amendment of section 13. A bank which was organized under this chapter after the adoption of these amendments was clearly a bank having banking privileges whenever it applied to the auditor for circulating notes. By these amendments the state sanctioned non-user of the franchise of issuing notes. The state cannot sanction non-user and also declare a forfeiture on ground of non-user. State v. St. Paul, 35 Minn. 222. The causes of forfeiture are given in section 44, added to chapter 33 by General Statutes 1866 (G. S. 1894, § 2525). Non-user is not specified as a cause of forfeiture. But any violation of chapter 33 is to work a forfeiture, and it is made the duty of the attorney general to bring an action to annul the existence of the corporation. That section provides a remedy for enforcement of the forfeiture and such remedy is exclusive. The remedy being by action, it follows that forfeiture cannot be enforced by the legislature. The law of 1895 does not declare any forfeiture of the franchises of any bank. On the contrary it provides that the privileges conferred and restrictions imposed upon any bank are to be modified to conform to that act. The intent of the act is to regulate banks of discount and deposit, as is shown by its title. Had that act included other banks than those mentioned in its title the act would have been unconstitutional.

Laws 1895, c. 145, applies only to banks organized pursuant to its terms. See sections 5, 11, 16, 18, 25, 27 and 28 of the law of 1895. The meaning of the word "bank" in that act is determined by the context. Sutherland, St. Const. § 262. Such banks may be incorporated without banking privileges. Such banks constitute one species of bank and not the banks authorized by chapter 33 of the General Statutes. Section 30 of the law of 1895 is the only section which repeals prior legislation. It is an express repeal and repeals no law not within the scope of the section. Only acts and parts of acts inconsistent are repealed by it. The implication is that if there are parts of prior acts not embraced in this act and not inconsistent, they are not repealed. Sutherland, St.

Const. § 155; Gaston v. Merriam, 33 Minn. 271; Lewis v. Stout, 22 Wis. 234; People v. Huntley (Mich.) 71 N. W. 178. Then chapter 33 is in force and unaffected by the act of 1895.

Section 5 of the law of 1895 defines the liability of stockholders in banks organized under its provisions. But this section cannot modify the liability of stockholders in banks organized under chapter 33. The liability of such stockholders is that specified in G. S. 1894, § 2501, and the liability in such banks is not inconsistent with the liability of stockholders in banks organized under the law of 1895. If the law of 1895 is class legislation then it is unconstitutional. If the law of 1895 is not class legislation but is practically necessary, and therefore not class legislation, then the law is essentially different, possessing substantial distinctions from chapter 33. On that theory no part of chapter 33 conflicts with the law of 1895. As well might it be said the savings bank law conflicts with the law of 1895.

*Davis, Kellogg & Severance,* for certain respondents.

Section 13, art. 9, of the constitution has reference only to banks issuing bank notes for circulation and does not apply to banks of discount and deposit. This provision was enacted at a time of financial depression caused by the issue of notes by irresponsible banks, and contemplated merely the evil of the reckless issue of bank notes. See Constitutional Debates, pp. 403, 405, 407; Allen v. Walsh, 25 Minn. 543; International v. American, 62 Minn. 501. No inference to the effect that the provision contemplated all banks can be drawn from the fact that the constitution of Wisconsin contemplated all banks. Wis. Const. art. 11, §§ 4, 5. For, in the Minnesota Constitutional Convention, a provision similar to the Wisconsin provision was contained in the first report by the committee on banking. See Minn. Convention Debates, p. 385. It may be well here to refer also to sections 13 and 14 of the Minnesota constitution as then reported. Subsequently section 13 and the first subdivision of section 14 were stricken out, and the provision as finally adopted will be found on pages 581, 667 and 668 of the same book. The constitution as adopted applies only to banks issuing notes for circulation. Const. art. 9, § 13. While the

70 M.—24

first sentence of this section might, on its face, seem to include all kinds of banking laws, still, as this court has said, the provisions must be considered as a whole. Certainly the first, second, third, fourth and fifth subdivisions negative the idea that it does include all kinds of banks.

The law of 1895 empowering the bank examiner to apply for a receiver applies only to an ordinary bank of discount and deposit, and as such is constitutional. The fact that from 1858 down to 1895 our banking acts embraced provisions for the creation of banks of circulation as well as of discount and deposit, does not leave it to be inferred that the legislature considered the provisions of article 9, § 13, to apply to all banks. The legislatures of this state have passed laws for the organization of many corporations with power of discount and deposit, without complying with article 9, § 13, e. g. in 1867 the act for the incorporation of savings banks. These banks have power to discount, loan money and receive deposits. See Laws 1867, c. 23. See, also, Laws 1879, c. 109, § 1, subd. 7. Under G. S. 1894, § 2841, et seq., annuity, safe deposit and trust companies could be organized with the power to receive money on deposit, to discount bills and notes and with all the powers of banks of discount and deposit.

The law of 1895 is not unconstitutional as impairing the obligation of contracts. Conceding that the Bank of Minnesota could have issued notes prior to 1895, if it never has exercised such power the legislature could take the power away. Pearsall v. Great Northern, 161 U. S. 646; Louisville v. Kentucky, 161 U. S. 677.

The double liability as it existed prior to 1895 was not the constitutional liability provided for by Const. art. 9, § 13, but was imposed by G. S. 1866, c. 33, § 21. Allen v. Walsh, supra. Hence while the legislature could not reduce it below a single liability under art. 10, § 3, yet, at least as to all creditors whose debts accrued after the passage of this law, the liability would be single. Jerman v. Benton, 79 Mo. 148; Ochiltree v. Railroad, 21 Wall. 249, 54 Mo. 113; Coffin v. Rich, 45 Me. 507; 3 Thompson, Corp. §§ 3033, 3041; Gray v. Coffin, 9 Cush. 192; Stanley v. Stanley, 26 Me. 191. The fact that the statute gives the receivers the right to enforce the liability is a mere change of remedy which does not affect the

substantial right of the creditor. Tennessee v. Sneed, 96 U. S. 69, 74; In re Penniman, 11 R. I. 333; Story v. Turman, 25 N. Y. 214; Terry v. Anderson, 95 U. S. 628.

Section 20 of the act of 1895 is not void in that it provides for taking property without due process of law. It does not violate Const. art. 1, §§ 2, 7. It cannot be argued that the assets of the bank were sequestered without a hearing and that the superintendent of banks found the delinquency. There is no sequestration of the assets until judicial proceedings have been commenced. It is no violation of the state or federal constitutions that it has been made the duty of the superintendent of banks, upon finding that a bank has acted in a fraudulent or unwarrantable manner, or violated any of the provisions of the act, to take possession of the books, records and assets and to hold them exempt from levy and attachment during a reasonable time necessary for further examination, and to enable him to apply to a court of competent jurisdiction for the appointment of a receiver. Chicago v. Needles, 113 U. S. 574; Eagle v. Ohio, 153 U. S. 446; Com. v. President, 21 Pick. 542; Bank v. Okely, 4 Wheat. 235 (387); Davidson v. New Orleans, 96 U. S. 97, 104; City v. Huling, 87 Mo. 203; McMillen v. Anderson, 95 U. S. 37; Hagar v. Reclamation, 111 U. S. 701; Lent v. Tillson, 140 U. S. 316; Dent v. West Virginia, 129 U. S. 114; Palmer v. McMahon, 133 U. S. 660.

The law of 1895 is specially made applicable to existing banks. As this court said in the case of International v. American, supra, it is an unsafe rule of construction to dissect a statute and construe its sections separately. The right to enforce the liability of stockholders is conferred upon the receivers by the act of 1895, and by the very nature of the remedy it is exclusive. Allen v. Walsh, supra; Johnson v. Fischer, 30 Minn. 173; McKusick v. Seymour, 48 Minn. 158; Arthur v. Willius, 44 Minn. 409; Olson v. Cook, 57 Minn. 552; Minneapolis v. City Bank, 66 Minn. 441.

Formerly General Statutes, c. 76, provided the only remedy. Now chapter 145 has provided a different remedy. There is as much reason for holding this exclusive as for holding the remedy provided for by chapter 76. Allen v. Walsh, supra; Johnson v. Fischer, supra; Pollard v. Bailey, 20 Wall. 520; Haskins v. Harding, 2 Dill.

99; Morley v. Thayer, 3 Fed. 733; Youghiogheny v. Evans, 72 Pa. St. 331; Windham v. Sprague, 43 Vt. 502; Andrews v. Callender, 13 Pick. 484; Dauchy v. Brown, 24 Vt. 197; Potter v. Stevens, 127 Mass. 592.

Whether the liability is single or double, or single as to the creditors whose claims arose subsequently to 1895, and double as to those whose claims arose prior to that time, the receiver can enforce it under this law. See Allen v. Walsh, supra. The subject of the act is sufficiently embraced in its title. Johnson v. Harrison, 57 Minn. 575; State v. Anderson, 63 Minn. 208.

*Charles J. Berryhill,* in pro. per., as one of the respondents.

The claim of unconstitutionality of the law of 1895 is based upon two grounds: (1) That the act contravenes Const. art. 4, § 27; and (2) that because the law provides for a single liability of stockholders, it contravenes Const. art. 9, § 13. The validity of this law of 1895 has been indirectly upheld by the conclusion of this court in the case of International v. American, 62 Minn. 501.

The Iowa constitution 1857 (art. 8, § 9), makes stockholders in "banking corporations" liable once over to amount of stock, and that phrase meant banks of issue, deposit and discount, and banks of deposit and discount simply could still organize under the general incorporation law. Allen v. Clayton, 63 Iowa, 11. Section 5 of said article 8 requiring the law creating corporations "with banking powers" to be submitted to a popular vote, means full and unlimited banking powers; that is, the power to issue bills to circulate as money, and also the power to discount bills and receive deposits. Allen v. Clayton, supra.

Under California Const. art. 4, § 34, the legislature is forbidden to charter a corporation for "banking purposes." Yet a bank of discount and deposit was held to be not a bank though called such. Bank v. Fairbanks, 52 Cal. 196. See, also, Bank v. Hemme, 105 Cal. 376. Ohio Const. art. 13, § 7, requires a law "authorizing associations with banking powers" to be submitted to popular vote. Yet it was there held that "An act to incorporate Savings and Loan Associations" was constitutional because it did not establish a bank of issue. Dearborn v. Northwestern, 42 Oh. St. 617. The

Kansas constitution requires that "no banking law shall be in force" until submitted to a vote of the people and adopted. The legislature passed a law regarding banks of deposit and discount. That was held constitutional without submission, in Pape v. Capitol, 20 Kan. 440, 442, affirmed in Blaker v. Hood, 53 Kan. 499. The constitution of Illinois provides that "no act of the general assembly authorizing corporations or associations with banking powers" should go into effect except upon vote of the people. A law creating a bank of discount and deposit was held constitutional without approval by the people. People v. Loewenthal, 93 Ill. 191. New York Const. 1846, art. 8, § 7, imposed on stockholders in corporations "with banking powers" a certain liability. This was held to mean banks of issue. In re Lee, 21 N. Y. 9. Other cases under similar constitutional provisions are to the same effect. In re Koetting, 90 Wis. 166; State v. Reid, 125 Mo. 43.

A general liability created by statute without a remedy may be enforced by an appropriate common-law remedy. But where the provision for the liability is coupled with a provision for a special remedy, that remedy and that alone must be employed. Pollard v. Bailey, 20 Wall. 520. A prescribed statutory form of remedy is held to be exclusive and not cumulative. 23 Am. & Eng. Enc. 896, note 2; Allen v. Walsh, supra; 3 Thompson, Corp. §§ 3560, 3561. In Maine the enforcement of stockholders' liability in banks was originally at the suit of a creditor. A subsequent statute imposed the duty upon receivers. The remedy was held to be exclusive. Hewett v. Adams, 50 Me. 271, 282. Where an order of court authorized a suit by receivers to enforce their liability, it was held in New York that the remedy was exclusive, while before the law conferred the right upon creditors. Story v. Furman, 25 N. Y. 214, 231.

COLLINS, J.

This was an independent action brought by plaintiff, as a creditor, in behalf of herself and all other creditors who should become parties, against the stockholders of the Bank of Minnesota, to enforce the individual liability of such stockholders.

From the complaint it appeared that said bank was organized

under the laws of this state, as a bank of deposit, discount, and issue, long prior to the enactment of Laws 1895, c. 145; that it continued to do business until December 22, 1896, when, being wholly insolvent, it suspended payment and closed its doors. December 23, upon the petition of the state superintendent of banks, the district court for the proper county appointed F. A. Seymour and William H. Lightner as receivers of said corporation. These gentlemen immediately qualified, and ever since have remained and still remain such receivers, having possession of all of the property of said corporation. They are also made defendants in the action. The formal allegations show the number of shares of stock held by each defendant, the total liability of the corporation and the value of its assets, from which the necessity of enforcing the stockholders' liability clearly appears.

To this complaint several of the stockholders demurred, some jointly and others separately; all of the statutory grounds for demurring being urged in one or more of these pleadings. This appeal is from an order of the court below sustaining these demurrers.

In support of the order it is contended by counsel for the demurring stockholders that it clearly appears from the complaint that the proceedings which resulted in the appointment of the receivers and the sequestration of the corporate assets were under the provisions of Laws 1895, c. 145, § 20; that under this law the right of a creditor to enforce the stockholders' liability, theretofore existing by virtue of G. S. 1894, c. 76, was devested, and the right to enforce such liability exclusively conferred upon receivers, becoming exclusive immediately upon their appointment.

The claim of counsel for the plaintiff creditor is that, for several specified reasons, chapter 145, supra, was and is unconstitutional and consequently inoperative; that, if this claim is unfounded, the provisions of said chapter are inapplicable to the facts alleged in the complaint, because not broad enough to include within their scope the stockholders of any banking corporation organized prior to its enactment or the liability of such stockholders; that, even if these receivers have the right to enforce the liability, it is not exclusive but simply concurrent with the same right already vested

in the creditors; that in any event the exclusive right to institute proceedings against stockholders was given to creditors for six months subsequent to insolvency by Laws 1897, c. 341, which it is urged was and is applicable to this action, because it is a law of procedure only; and, finally, that as it is alleged that $500,000 of the bank's indebtedness was contracted prior to the day that chapter 145 went into effect, August 1, 1895, for which the stockholders' liability was double, the receivers cannot enforce it.

A large part of the brief filed by counsel for plaintiff is devoted to the contention that chapter 145 is obnoxious to the constitution. It is urged:

(a) That it does not meet the requirements of article 9, § 13, in that it fails to provide for the issuance or regulation of circulating notes;

(b) That it impairs the obligation of the contract existing between banks theretofore organized and the state, in that it takes away the right to issue circulating notes;

(c) If it be held applicable to this insolvent bank, it impairs the contract obligation between its stockholders and those creditors whose claims arose prior to August 1, 1895, when the 1895 statute went into effect;

(d) Due process of law is not provided for when the bank superintendent is authorized to take possession of these corporations, and to make application to the court for the appointment of a receiver;

(e) That the title of the act is insufficient, under article 4, § 27; and

(f) That the act is in violation of article 4, § 33, of the constitution.

We have carefully examined every one of these points, and find that none are well taken. We are also satisfied that it would be a waste of time to discuss them. In so far as these precise questions are concerned, chapter 145 is constitutional, beyond a doubt.

The contention of counsel that the provisions of chapter 145 are not broad enough to bring banks organized prior to its becoming a law, or to bring the stockholders thereof, within its scope, is equally as unfounded. By section 29 its provisions are, in express

words, made applicable to banks then existing and doing business under the laws of this state. This, of course, includes the rights and powers conferred in section 20.

Nor is there any merit in the contention that under the terms of Laws 1897, c. 341, the creditors of the insolvent bank had, for six months after its insolvency was determined, the exclusive right to pursue the stockholders. The language of chapter 341 is general, and we are not to suppose that it was designed to apply to, affect, or by implication repeal, any part of section 20. If construed as demanded by counsel, a part of chapter 341 would be in direct conflict with the provisions found in section 20, empowering receivers to proceed to enforce the stockholders' liability. But from its language it seems clear that it was intended to apply only to cases where an assignment had been made or a receiver appointed under the insolvency law, and not to cases where the proceedings were brought under the provisions of chapter 145 or chapter 76.

There is nothing in the claim that receivers appointed under the provisions of said section 20 cannot enforce the double liability of stockholders imposed by chapter 33, § 2501, in all cases where such double liability should be enforced. The liability is statutory, whether double or single, and can as easily be determined, adjusted, and enforced in proceedings instituted by receivers as in those commenced by creditors.

We are now brought to a consideration of the claim made by counsel for defendants that the right given to creditors to enforce this liability under the provisions of chapter 76 has been wholly devested by the 1895 statute, and, in connection, the contention of counsel for plaintiff that, if the receivers have the right to enforce the liability in a case of this character, this right is merely concurrent with that of creditors, and that the right may be exercised by either one or the other, it being immaterial which.

Chapter 145 does not in express terms repeal the provisions of chapter 76, under which creditors have heretofore proceeded, and we find nothing to warrant the assertion that these provisions are repealed by implication. Our conclusion is that to a certain extent they are concurrent, and we have already held in Ueland v. Haugan, supra, page 349, that where a receiver attempts to enforce the lia-

bility the practice and procedure may be the same as if the remedy was being sought by creditors.

But it is quite obvious that the statutes which confer upon both receiver and creditor the right to proceed must not be construed so as to invite hasty and inconsiderate action by either of these parties, or so as to provoke a contest for priority of right between them. Such a construction would lead to results quite disastrous and not to be tolerated, and so it is highly proper that we should determine who is to have the primary right.

As to this we are quite well satisfied that in providing for the appointment of receivers for insolvent banking corporations, and that such receivers should have the right to enforce the stockholders' liability,—a right theretofore held by creditors only,—it was the intention of the legislature to bestow upon receivers the primarily exclusive right to proceed. They have the right of way, so to speak; and, while it is not made their positive duty to proceed against the stockholders, the duty rests upon them under the statute, by implication at least. If the duty is to be implied from the language found in section 20, it must be also held that by implication the receiver has the primarily exclusive right to institute a proceeding against the stockholder. If he has this right, the creditor cannot be permitted to supersede it or to commence proceedings himself, without good cause shown,—for example, that the receiver is incompetent or disqualified or has willfully neglected a duty,— and leave properly obtained from the court in which the insolvency proceedings are pending.

So controlled and governed, the rights of receivers and of creditors can be adjusted and regulated without injury to any of the parties interested, and without the clashing which would otherwise be inevitable. If the receiver proceeds to enforce this liability as provided in chapter 76, as he may, it must be by supplemental complaint filed in the original action. This action was prematurely brought, and in disregard of the primary right of the receivers. From the complaint it appeared that plaintiff had no legal capacity to sue, and that there was another action pending between the same parties for the same cause of action, namely, the action brought by the attorney general of the state against the insolvent,

in which the defendants, Seymour and Lightner, were appointed receivers.

The order sustaining the demurrers stands affirmed.