40          CASES IN THE SUPREME COURT,

State of Minnesota ex rel. v. The Southern Minnesota Railroad Co.

STATE OF MINNESOTA, *ex rel.*, Attorney General

*vs.*

THE SOUTHERN MINNESOTA RAILROAD COMPANY.

Where the charter of a corporation, or the general statute in force and applicable to the subject matter, imposes a specific duty, either in terms, or by fair and reasonable construction, and there is no other specific and adequate remedy, the writ of mandamus may be awarded to compel the performance of such duty; but the writ will not be awarded unless the right sought to be enforced is a complete and perfect legal right, and the reciprocal obligation a complete and perfect legal obligation.

These rules applied to the present proceeding which is an application for a mandamus to compel the Southern Minnesota Railroad Company to construct its railroad to the village of La Crescent.

Upon an examination in detail of the acts of congress, and of the acts of the legislatures of the territory and state of Minnesota bearing upon the question involved in this case. *Held*, that the same do not either in terms, or by fair and reasonable construction, or implication, impose upon said company a complete and perfect legal obligation to construct its railroad to said village of La Crescent, and the writ of mandamus accordingly denied.

The state upon the relation of the attorney general, based upon the affidavit of Thomas McRoberts, applied to this court for a writ of mandamus to compel the defendant to construct its railroad to the town of La Crescent. An alternative writ was granted commanding the defendant to build such road, or show cause why it should not. The defendant appeared and showed cause by answer, and the case was submitted upon the affidavit, answer, and briefs of counsel. The application

State of Minnesota ex rel. vs. The Southern Minnesota Railroad Co.

is founded principally upon statutes of the state, and the act of congress granting lands to the state to aid in the construction of certain railroads, which are cited by the court. Such portions of the affidavit and answer as are referred to in the opinion are sufficiently stated therein.

BRISBIN & PALMER, for Plaintiff.

SMITH & GILMAN, for Defendant.

*By the Court.*—BERRY, J.—For the sake of convenience, we will in this opinion designate the moving party as the plaintiff, and the railroad company as the defendant. The important question in the case is whether upon the facts appearing, the defendant can be compelled by mandamus to construct its railroad to the village of La Crescent.

As in our opinion the question must be answered in the negative, it will not be necessary to consider the objection taken by the defendant to the form in which, and the party by whom and for whom this application is made.

"By our statute (Sec. 2, ch. 80, Gen'l Stat.) the writ of mandamus (which is regulated by said chapter) may be issued to any    *    *    *    *    corporation    *    * to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

"Where the charter of a corporation, or the general statute in force and applicable to the subject, imposes a specific duty, either in terms, or by fair and reasonable construction and implication, and there is no other specific or adequate remedy, the writ of mandamus will be awarded." 1 *Redfield on Railways* (4th Ed.) 644; *York &c. Railway Co. vs. The Queen,* 1 *Ellis & Bl.* (72 E. C. L.) 858. But the writ will not be awarded, unless the right sought to be enforced is a

" complete and perfect legal right, and of course, the reciprocal obligation a complete and perfect legal obligation." 1 *Red-field on Railways* (*4th Ed.*) 644; *Ex parte Napier* 18 *C. B.* (83 *E. C. L.*) 694. The right and obligation are' necessarily correlative; if there be no obligation, there is no right.

Unless, then, in the case at bar there is a complete and perfect *legal* obligation binding the defendant to construct its road to the village of La Crescent, the writ prayed for must be refused.

If there is any such obligation resting upon the defendant, it is of course statutory in its origin, and must, as we conceive, be found in one or more of the three acts following, to-wit:

1st. The act of congress, entitled, " an act making a grant of land to the territory of Minnesota      *      *      to aid in the construction of certain railroads in said territory, &c., &c.," approved March 3d, 1857.

2d. Chapter 1, Special Laws Minnesota for 1864, entitled " an act to facilitate the construction of the Southern Minnesota Railroad, &c., &c."

3d. Chapter 1, Special Laws, Minn. 1865, entitled " an act to aid the Southern Minnesota Railroad Company in the construction of their branch road, &c."

Sundry other acts of the legislature of the state are mentioned in the application for the writ, and in the argument of counsel, but we do not perceive their importance in this case except as they are hereinafter referred to.

The act of congress of March 3d, 1857, grants to the territory of Minnesota lands "for the purpose of aiding in the construction" of several proposed lines of railroad, and, among others, of a railroad "from La Crescent, via Target Lake, up the valley of Root River to a point of junction with a road running westerly from Winona." The lands granted are to be exclusively applied to the construction of the road for and

State of Minnesota ex rel. v. The Southern Minnesota Railroad Co.

on account of which they are granted, and "shall be disposed of only as the work progresses, and the same shall be applied to no other purpose whatever."

By section 3 it is further enacted, that the land granted shall be subject to the future disposal of the legislature of the territory or future state for the purposes in the act expressed and no other. By section 4, it is further enacted that the land granted shall be disposed of by said territory or future state only in the manner following, that is to say: "That a quantity of land not exceeding one hundred and twenty sections for each of said roads and branches, and included within a continuous length of twenty miles of each of said roads and branches, may be sold; and when the governor of said territory or future state shall certify to the secretary of the interior, that any twenty continuous miles of any of said roads or branches are completed, then another quantity of land hereby granted, not to exceed one hundred and twenty sections for each of said roads or branches, having twenty continuous miles completed as aforesaid, and included within a continuous length of twenty miles of each of such roads or branches, may be sold; and so from time to time until said roads and branches are completed; and if any of said roads or branches is not completed within ten years no further sale shall be made, and the lands unsold shall revert to the United States." These are the only provisions of the act of congress which can have any bearing upon the question in hand.

We note in passing that by an act of congress approved March 3d, 1863, the time for completing the roads was extended for a period of eight years, said act containing a provision as to reversion similar to that found in the act of 1857.

Chapter 1 Sp. Laws (Minn.) 1864, is the defendant's charter. The first section, which appears to have been in part rather hastily compiled from preceding acts, grants and transfers to

certain persons therein named (and spoken of as constituting the Southern Minnesota Railroad Company, the defendant herein,) all the rights, privileges, franchises, lands, property and interests granted by the Territory of Minnesota to the Root River Valley and Southern Minnesota Railroad Company, or Southern Minnesota Railroad Company, by certain acts therein named, to-wit: the act of March 2d, 1855, and acts amendatory thereof, and by the act of May 22d, 1857, which pertain to the line of road from La Crescent up the Root River Valley, &c., and to the line of road and branches prescribed in said act of March 2d, 1855, and acts amendatory. And the section goes on to provide with some repetition that "for the purpose of carrying out and effecting the objects of this act, the Southern Minnesota Railroad Company, and their successors and assigns, shall have and be possessed of all the powers, immunities, rights, franchises and privileges contained in and provided for in the said two acts referred to in this section, and be subject to all the conditions and provisions of the said acts, excepting as altered or changed by this act." Turning now to the acts referred to in the section from which the above extracts are made, we find that by section 2 of the original charter of the Root River Valley and Southern Minnesota Railroad Company, being the act of March 2d, 1855, (ch. 24, Laws 1855) it is enacted as follows: "The said corporation is hereby authorized and empowered, and it is hereby declared that the objects and purposes thereof are to survey, locate, construct, maintain, use and operate * * a railroad * * * from the village of Hokah, in the county of Houston, and territory of Minnesota, westwardly * * * with the *privilege* of a branch starting from Hokah and running up the west bank of the Mississippi River by way of Target Lake to Eagle Bluffs, in Winona county," &c., &c.

Section 10 of the same chapter provides that "the said

corporation shall locate   *   *   at least twenty-five miles of the said railroad, and commence work thereon within five years from the time when this act shall take effect, and shall fully complete   *   *   at least one track from Hokah to the Blue Earth River,   *   *   *   within ten years of the same time."

It will be seen at a glance that these provisions of the act of 1855, possess no importance in this case; but as the act is referred to in the defendants' charter, (act of 1864 *supra*) and as these are the only provisions found in the act of 1855, which it would be necessary *to look at* in this case, we have quoted them simply for the purpose of showing that there is nothing in the act of 1855 (the original charter), which has any material bearing upon the questions involved in the present application.

The act of May 22d, 1857 (Chapter 1, Laws 1857, extra session), which was an act to execute the trust created by an act of congress, entitled " an act making a grant of land to the territory of Minnesota, &c., &c.," contains in sec. 1 of sub-chapter 3, the first mention (which we discover) of La Crescent in connection with the line of railroad now owned and operated by defendant. (Ch. 65, Laws 1857 ex. session, in which La Crescent is *again* mentioned, cuts no figure in this case.) Section 1, ch. 1, sub-ch. 3, Laws 1857, ex. session, enacts that " the Root River Valley and Southern Minnesota Railroad Company are hereby authorized and empowered to survey, locate, construct, and complete, and perpetually to have, use, maintain, and operate a railroad, with one or more tracks, or lines from La Crescent via Target Lake up the Valley of Root River,   *   *   *   *   in accordance with the act of incorporation of said Root River Valley and Southern Minnesota Railroad Company, approved March 2d, 1855, and all subsequent amendments thereto."

By section 3, all the lands, &c., granted to the territory of Minnesota by the act of congress aforesaid, approved March 3d, 1857, are, as far as applicable, conferred upon said company, subject to the provisions in the chapter set forth, and the provisions of said act of congress.

By section 4, a time is fixed within which the roads authorized shall be completed. This is not important in this case, since the conditions and provisions of the act of 1857 (now being considered) are "altered" and "changed" by the act of 1864, before cited. Beyond these sections we discover nothing in the act of 1857, aforesaid, which needs to be referred to.

After the passage of the act of 1857, more or less legislation was had in reference to the road now owned by the defendant, but we do not discover that any of it is important in the examination of the pending proceeding, until we come again to the act of 1864. To that act, then, we will now return. In addition to the provisions of chapter 1 of that act, before quoted, sec. 4 enacts : " That it is hereby made a condition of the grants herein made, that said person or persons, or corporation, shall not acquire the title to the road beds,    *    *    * rights, privileges and franchises, and the track and line of the said Southern Minnesota Railroad Company, until said company shall fully complete and put in running order ten miles of said railroad.   *   *   *   And upon the construction and completion of ten miles of said road, with the cars running thereon, the governor shall certify the same to the secretary of the interior, and thereupon, and not before, the said company may demand and be entitled to receive from said governor, in the name of the state, a deed in fee simple of the one hundred and twenty sections of land which the state may then be entitled to, under the provisions of the act of congress hereinbefore referred to, approved March 3, A. D. 1857,

for the purpose of aiding in the construction of said road. And upon the construction and completion of each and every consecutive twenty miles of said railroad, the governor of said state of Minnesota, acting for and in behalf of said state, shall execute, in the name of the state of Minnesota,   *   *   * a full and absolute title in fee simple to all the lands appertaining thereto, which were conveyed to said state or territory," by the act of congress· aforesaid, "and which would have accrued to the Root River Valley and Southern Minnesota Railroad Company, or Southern Minnesota Railroad Company, &c., &c."

By section 7, of said chapter, it is further enacted: "That the rights, privileges, franchises, road-bed, right of way, properties, and immunities hereinbefore granted and assigned, are so granted, transferred and assigned, upon this express condition, that the said Southern Minnesota Railroad Company shall build and construct ten miles of said road within two years from the 20th day of January, A. D. 1864, and thirty miles of said road within three years from said 20th day of January, A. D. 1864, and fully build, construct and complete, and fully equip said road from La Crescent up the Root River Valley, via Chatfield, to a junction with the Winona and St. Peter road at Rochester, on the present located line thereof, except so far as it may be necessary to change the same for engineering purposes, in coming up the valley of the Root River; and upon the failure to keep and perform either or any of the conditions in this section contained, all the unbuilt portions of said road, with the properties, rights and franchises appertaining thereto, shall be absolutely forfeited, and shall revert to the state, without any other act or ceremony whatever, in which case the state shall have and possess the same in the like character she now holds them, without any merger or

extinguishment, to be used, granted and disposed of for the purpose of aiding the construction of said road."

These are all the provisions of *the act of* 1864, which have any direct bearing upon the subject of inquiry in this case. It is in effect admitted by defendant, that it has accepted the act of 1864, aforesaid, and has proceeded and is proceeding under the same; that it has constructed thereunder more than one hundred miles of road, and has received a conveyance of the lands appertaining to the same, under the congressional land grant aforesaid.

Recurring now to the principles regulating the issue of the writ of mandamus as laid down in a former part of this opinion, we have to enquire, whether upon the foregoing state of facts there is a complete and perfect legal obligation binding the defendant to construct its road to the village of La Crescent. And for the purposes of this inquiry it may be admitted in favor of the plaintiff's application, that said village of La Crescent, is the La Crescent referred to and intended in the act of congress aforesaid, and the subsequent acts of the legislature of the territory and state of Minnesota heretofore cited. If the complete and perfect legal obligation above spoken of exists, it must be because it is imposed upon defendant either in terms, or by fair and reasonable construction and implication. 1 *Redfield on Railways*, (4th Ed.) 644; *York, &c., Railway Co. vs. The Queen, supra.* That no such obligation is imposed in terms, will clearly appear from a careful examination of the legislation heretofore cited and quoted so far as deemed material. The act of congress simply granted land " for the purpose of aiding in the construction " of a road from La Crescent, &c., such land to be subject to the disposal of the legislature for that purpose, &c. By the act of 1855, (the original charter) so far as it is of any importance, " the said corporation is authorized and empowered,

State of Minnesota ex rel. v. The Southern Minnesota Railroad Co.

and it is hereby declared that the objects and purposes thereof are to survey, locate, construct   *   *   *   a railroad,   *   *   * with the privilege of a branch starting from Hokah and running up the west bank of the Mississippi River by way of Target Lake to Eagle Bluffs, in Winona county," &c. The branch thus spoken of (as a glance at the map will show) is the only portion of this road thus authorized which could include its line to La Crescent, as it does in terms under the amendment found in ch. 65, Laws 1857, (Ex. sess.) by which the words " La Crescent in Houston county " are substituted for " Eagle Bluffs in Winona county." Section 10 of the act of 1855, as we before remarked, does not touch this case.

By the act of May 22d, 1857, which was the act to execute the trust created by the congressional land grant act, it is enacted that " the Root River Valley and Southern Minnesota Railroad Company are hereby authorized and empowered to survey, locate, construct   *   *   *   a railroad," &c. Certainly there is nothing in any of these passages of the statutes which *in terms* imposes the complete and perfect *legal obligation* spoken of upon the defendant. The language is permissive and enabling, not imperative and obligatory. *York, &c., Railway Co. vs. The Queen,* 1 *El. and Bl.* (72 *E. C. L.*) 858. 1 *Redfield on Railways,* § § 152, 155. But if this language does not in terms, that is to say *expressly* impose the obligation mentioned, there is none to be found that does. It remains, then, to consider whether " the complete and perfect legal obligation is imposed," under any of the statutory provisions which we have quoted, " by fair and reasonable construction and implication." As to this subject of inquiry, it is too plain to justify us in consuming time to show why it is plain, that if the obligation is imposed by construction or implication at all, it is so imposed by the provisions (before quoted) of the act of congress granting lands, or by section 3 of the territorial

act of March 3d, 1857, aforesaid, conferring the lands granted so far as applicable upon the Root River Valley and Southern Minnesota Railroad Company, or by the act of 1864 aforesaid, or by an act passed in 1865, which we barely mention in this connection, and which will be more particularly considered hereafter.

As to the act of congress, it grants lands to the territory of Minnesota for the purpose of aiding in the construction of a line of railroad (among others) from La Crescent via Target Lake up the valley of Root River, &c , including (upon the assumption that the village of La Crescent is referred to) the piece of road which plaintiff seeks to compel defendant to construct. These lands are to be exclusively applied to the construction of the road for and on account of which they are granted, and are subject to the future disposal of the legislature of the territory, or future state, for the purposes in the act expressed, and no other. If this was all, it might. perhaps, furnish some ground for contending that the acceptance of the benefits conferred by the 3d section of the act of 1857, and by the act of 1864, under and in accordance with the act of congress, by strong implication imposed upon the beneficiary a binding legal obligation to construct the whole of the line in aid of which the grant is made. Any such implication is, however, cut off by the subsequent provisions of the section prescribing the manner in which the land shall be disposed of by the territory, or future state. An examination of these provisions (which have before been quoted at length) will show, that with the exception, perhaps, of one hundred and twenty sections (of the lands granted) which were to be sold in advance of construction, the lands granted were to be sold for each of said roads or branches in quantities not exceeding one hundred and twenty sections for each twenty continuous miles of road completed, and "so from time to time until said

State of Minnesota ex rel. v. The Southern Minnesota Railroad Co.

roads or branches are completed, and if any of said roads or branches are not completed within ten years no further sale shall be made, and the lands unsold shall revert to the United States." For the present we will only call attention to the fact that there is nothing in the act of congress requiring the construction of the road "from La Crescent via Target Lake," &c., to be commenced at any particular place, nor requiring any particular part of the road to be first completed, (for land not exceeding one hundred and twenty sections is to be sold whenever the governor shall certify to the secretary of the interior that "any" twenty continuous miles is completed) while it is apparent upon the face of the act that it was in the contemplation of congress that a part only of the line of road to aid in the construction of which the grant involved in this case made, might be constructed, while a part was abandoned.

It is, perhaps, well to remark here, to prevent misunderstanding, that by the practical construction put upon the act of congress by the authorities of this state and of the federal government, the *sale* of lands provided for in said act is made by conveying the same directly to the corporation owning the road.

Without now stopping to consider further the effect and meaning of the act of congress, we will pass on to examine sec. 3 of the act of 1857, aforesaid, and the act of 1864, since our conclusions with regard to all of these enactments stand upon one general ground.

As to section 3, of the act of 1857, we need only say that under its provisions the lands granted by the act of congress, as far as applicable, were conferred upon the Root River and Southern Minnesota Railroad Company, *subject to the provisions of the act of congress.*

As to the act of 1864, by sec. 4, (which we have quoted in

full so far as important), it is made a *condition* of the grants in said act contained, that upon the construction and completion of ten miles of its road with the cars running thereon, the defendant shall be entitled to receive a deed of one hundred and twenty sections of land under the provisions of the act of congress; and upon the construction and completion of each and every twenty consecutive miles the Governor shall convey to said company all the lands thereto appertaining under the act of congress. As to the effect of this section of the act of 1864, it is to be observed, as of the congressional act, that it does not require the road to be commenced at any particular point, or that any particular portion of the line shall be *first* constructed. Beyond this the section appears to possess no special importance in this case.

Section 7 of the act of 1864, as we have already seen, enacts that the rights, privileges, franchises, properties, &c., &c., granted by said act, are granted upon the express condition that the defendant " shall build and construct ten miles of its road within two years from the 20th day of January, A. D. 1864, and thirty miles    *    *    within three years from said 20th day of January, A. D. 1864, and fully build, construct and complete, and fully equip said road from La Crescent up the Root River Valley, via Chatfield, to a junction with the Winona & St. Peter Road at Rochester, on the present located line thereof, except so far as it may be necessary to change the same for engineering purposes, in coming up the valley of the Root River; and upon the failure to keep and perform either or any of the conditions in this section contained, all the unbuilt portions of said road, with the properties, rights and franchises appertaining thereto, shall be absolutely forfeited, and shall revert to the state, without any other act or ceremony whatever, in which case the state shall hold and possess the same in the like character she now holds them,

State of Minnesota ex rel. v. The Southern Minnesota Railroad Co.

without any merger or extinguishment, to be used, granted and disposed of for the purpose of aiding the construction of said road." It will be noticed with regard to this section also, that it names no point at which the work is required to be commenced, nor is any particular part of the road required to be *first* constructed.

With regard to this section also, it may be said, as it may with regard to the act of congress, that it was evidently in the contemplation of the legislature, that a part only of the line of road authorized might be built, while a part would be abandoned. And this section is analogous to the act of congress in the further respect, that if the language by which the grant of rights, franchises, &c., is made upon *the express condition that the company shall build and construct* ten miles of said road, &c., &c., as aforesaid, stood alone, there would be some reason for claiming, then, by strong implication, that a binding legal obligation was imposed upon the company to construct accordingly. But this implication is in our opinion excluded by the context.

This brings us to the considerations which, as before mentioned, are common to sections 4 and 7 of the act of 1864, and to the act of congress. The latter act provides in substance, that the lands granted are to be sold from time to time as the construction of the road progresses, and "if any of said roads or branches is not completed within ten years, no further sale shall be made, and the lands unsold shall revert to the United States." In other words, the United States set apart a quantity of its lands, granting the same to the territory of Minnesota for the purpose of *aiding*, in this instance, in the construction of a line of road " from La Crescent via. Target Lake," &c. The United States, in effect, make the proposition to defendant through the territory and state of Minnesota as follows, viz: " for the purpose of aiding you in

the construction of said line of road, we propose and offer to give you the land thus set apart in the manner following, namely : from time to time as you construct the road you shall receive conveyance of these lands at a rate not exceeding one hundred and twenty sections for each continuous twenty miles constructed, and if · at the end of ten years any part of said line of road is not completed, the lands thus set apart and granted to the territory for your aid shall (so far as they have not been conveyed to you) revert to the United States, and you shall have no more of them."

This is, as it seems to us, a fair construction of these provisions of the act of congress, and so construed, they certainly furnish no countenance to the idea that the act of congress, considered alone, or in connection with the fact that the defendant has, as far as it has gone, accepted its benefits, imposes upon the defendant any binding legal obligation to construct the whole of its line " from La Crescent via Target Lake, &c."

These remarks apply also to section 4 of the act of 1864, and a similar course of reasoning may be adopted in reference to section 7 of the act of 1864. While by the latter section the grant is made upon the *express condition* that the road shall be constructed at the rate therein specified, it is further provided that upon failure to perform such conditions, the *unbuilt portions* of the road, with the properties, rights and franchises appertaining thereto, shall be absolutely forfeited to the state. Then the legislature of the state, in effect, says to the company : " We grant you these rights, franchises, lands, &c., upon the condition that you construct certain lengths of road within certain specified times ; if you fail to build as rapidly as the conditions require, the grant shall be at an end as regards the unbuilt portions of the road, and you shall take under it no longer."

State of Minnesota ex rel. v. The Southern Minnesota Railroad Co.

We will not repeat what was said with regard to a similar provision for forfeiture in the act of congress; but with regard to section 7 of the act of 1864, there is the additional consideration, that as respects such portions of the road as shall remain unbuilt, there is a forfeiture, not only of the lands granted by congress, but also of all the properties, rights and franchises appertaining thereto ; a provision which takes away not only the right to the lands, the road-bed, &c., but the right to build the road and to operate it. This forfeiture is to take place upon the default. The company has the whole of the times specified within which to comply with the conditions, and after its default it is deprived of the power to go farther. It is difficult to reconcile this result with the idea that the company is imperatively required to construct the entire line.

The view which we take derives still further and strong confirmation from the fact that after the forfeiture the state takes the reverting rights, properties and franchises, and holds them, as she held them before granting them away, " *to be used, granted and disposed of for the purpose of aiding the construction of said road ;*" the identical road which it is claimed the defendant is legally bound to construct.

In our opinion, then, none .of the acts referred to impose upon the defendant a complete and perfect legal obligation to construct the entire line " from La Crescent via Target Lake up the valley of Root River," &c. Both in the act of congress and the act of 1864, the provision for forfeiture is confined to the unbuilt portions of the road, and whatever appertains thereto. The built portions, and whatever has been granted or received as appertaining thereto, remain the property of the company notwithstanding the forfeiture. It seems to us, then, that the forfeiture is the only consequence which was intended to follow the failure of the company to construct

any part of its road. *See York &c., Railway Co. vs. The Queen, supra.*

One point remains to which we advert upon this branch of the case in view of certain allegations in the application and answer in this proceeding. It will be noticed that no time is fixed by the act of 1864, within which that part of the line remaining to be constructed after the completion of thirty miles is to be constructed. As it appears in this case that more than thirty miles have been constructed in time, it would follow, even if the defendant was under an imperative legal obligation to construct the entire line, that the defendant was not in default, unless, perhaps, some rule of reasonable time was to be applied, (a rule not easily framed,) or, possibly, unless it was made to appear that the defendant had in some sufficient way manifested its intention not to fulfil its obligation.

The plaintiff's application alleges that " defendant is informed and believes it is not the design of defendant to construct the road over the said line to La Crescent; that for a consideration of $500,000, in bonds to it issued by the city of La Crosse, it has agreed to connect with the river Mississippi at or about where it now connects with said river, and not to complete the said road to La Crescent aforesaid." The answer denies that defendant "has agreed not to extend the line of its road up the Mississippi River to La Crescent; and denies that it has ever agreed or determined not to do so; and alleges that the St. Paul and Chicago Railway Company is authorized to extend its line   *   *   *   to La Crescent, and that it is the design and intention of the said Southern Minnesota Railroad Company to extend the line of its road up the river so as to form a connection with said St. Paul line, as soon as practicable."

State of Minnesota ex rel. v. The Southern Minnesota Railroad Co.

We think the denial is in effect as broad as the allegations of the petition. The defendant is a corporation, and unless it has *agreed or determined* not to extend the road to La Crescent, it can hardly be said (as a natural person might) to design not to extend it to that place. The point made in behalf of plaintiff as to defendant's intention not to fulfil its supposed obligation, is therefore not raised in this case.

It only remains now to consider the effect of chapter 1, Special Laws of 1865. This act provides that for the purpose of aiding the defendant in the construction of its branch railroad from some point on the main line in Fillmore county, westwardly, certain swamp lands are set apart to be certified and conveyed by the governor of the state to defendant, from time to time as the construction of said branch road progresses; " *Provided,* That the said company shall construct their branch road from the village of Hokah up the west bank of the Mississippi River, by the way of Target Lake, to La Crescent, in Houston county, according to the provisions of the act of congress of March 3d, 1857, granting lands to the territory of Minnesota for railroad purposes, before they shall be entitled to any of the swamp lands granted by this bill. *Provided,* That if said company shall not, within five years, construct and equip for business, with the cars running thereon, at least twenty miles of said road, and the residue thereof within seven years from the passage of the act, then and in that case all the land hereby granted appertaining to the unbuilt portions of said branch road, shall be forfeited to the state."

Defendant admits that under this act it has received a conveyance of 32,342 acres of swamp lands, and alleges that the company was entitled to the same under the act, and that the governor so decided and made conveyance accordingly; and defendant claims that the action of the governor is con-

clusive in the premises. The only question presented by the act of 1865, as applicable to this case, which will not be disposed of by the views which we have already expressed in considering kindred questions arising under other statutes, is that which grows out of the first proviso quoted, taken in connection with the fact that defendant has received the conveyance of swamp lands as appears above. But we think this question not formidable. If, as defendant contends, the decision of the governor is conclusive upon the question of defendant's compliance with the *proviso* and right to the lands, there is nothing more to be said, for the compliance is *res adjudicata*. If the governor's decision is not conclusive, the case seems to us to be this: if defendant has performed all conditions precedent necessary to entitle it to the land, then the fact that it has received the conveyance imposes no further obligation upon it; if on the other hand the defendant has not performed such conditions precedent, then the governor has transcended his authority, and as he was but an agent, though a public agent, and the swamp lands were not his property, nor the title of the same in him, and as the conditions upon which he was authorized to convey are found in the same legislative act in which his authority is found, (so that everybody must take notice of the same) if he has attempted to convey before conditions performed, it seems to us (so far as it is proper to determine the question collaterally) that no title could pass by his conveyance. If he has thus transcended his authority, the conveyance would appear to be a nullity, and the company to have taken nothing by the same. In either aspect of the matter, then, we are unable to see how the act of 1865, taken with or without reference to the conveyance to the defendant, can operate to impose upon the company the binding legal obligation necessary to support the plaintiff's application in this case.

Whether defendant acted within its authority in constructing its road from Hokah via Target Lake up the west bank of the Mississippi River on the line on which it appears to have in fact constructed the same, and upon which it is now operating it, is not important in this case. The defendant claims that what it has thus done, and is doing, is justified by the legislation already referred to, and particularly chapter 2, Special Laws 1868. But the question in this case is not whether defendant is justified in what it has thus done, but whether it shall be compelled by mandamus to build as aforesaid.

The questions raised in this case are of considerable importance. We have endeavored to give them the attention which they appear to demand, and in so doing have examined all the cases cited by plaintiff's counsel in support of his positions. The only one to which we desire to allude particularly is a case much relied upon, namely: *Commonwealth vs. Erie & N. E. R. R. Co.,* 27 *Penn. State,* 339. The pleadings in the case are not reported fully, but we gather from the preliminary statement that the proceeding was by *bill in equity,* and that the relief asked was an *injunction* upon the ground (among others), that the E. & N. E. R. R. Co. had located, built and was operating its road in a place where it was not authorized so to do, by the terms of its charter, and not in the place where it was authorized, and, as the court appears to hold, *commanded* so to do. The injunction was not granted, but a re-location and re-construction of the road in compliance with the requirements of the charter in reference to location were decreed, the same to be consummated within a time specified.

The case differs entirely from that at bar in respect to the nature of the proceeding, and the remedy prayed for. And it seems to us that the decree was made, rather in the exercise of an equitable discretion, and to give the company time and opportunity to comply with the charter and escape an injunc-

tion which might occasion great public and private inconvenience, than as awarding the ultimate remedy appropriate to the case. What this remedy would have been in case the decree had not been performed does not appear. There is no good reason, we think, for supposing that it would have been anything other than the injunction prayed for. As the decree seems to have been complied with, this question of ultimate remedy is not raised.

. It does not seem to us, then, that the case cited possesses any special importance in the case at bar.

Mandamus denied.