FRANK A. SEYMOUR and Another v. BANK OF MINNESOTA and Others.

March 5, 1900.

Nos. 11,798—(173).

### Laws 1895, c. 145, Constitutional.

Laws 1895, c. 145 (being an act to revise the laws relating to banks of discount and deposit), *held* to be valid, and not in conflict with section 13, article 9, of our state constitution. Anderson v. Seymour, 70 Minn. 358, followed.

### Same—Repeal of Right of Bank to Issue Bills.

*Held*, that by the terms of Laws 1895, c. 145, the right of banks to issue bills under articles of incorporation based upon the general laws of the state previous to that act was revoked and withdrawn.

### Liability of Stockholders.

The act of 1895, c. 145, reduced the liability of all stockholders in banks organized under the state laws from a double to a single liability after August 1, 1895.

### Renewal of Certificates of Deposit.

Evidence in this case considered with reference to bank certificates of deposit, and the renewal of the same by issue of new ones in lieu thereof. *Held*, that such transactions constituted new contracts, upon which the statutory liability of stockholders for the debts of the bank is to be based.

### Liability upon Debts Prior to Laws 1895, c. 145.

The act of 1895 did not reduce the liability of stockholders upon any obligation created between the passage of such act and the time when by its terms it was to take effect. As to such obligations, the double liability under the previous law applied.

Action in the district court for Ramsey county by plaintiffs, as receivers of the Bank of Minnesota, to enforce the individual liability of the stockholders in the bank. The case was tried before Otis, J., who made findings of fact and conclusions of law, and ordered judgment in favor of plaintiffs, as stated in the opinion. From the judgment entered pursuant to such order, plaintiffs and certain of defendants appealed. Affirmed.

*Young & Lightner*, for plaintiffs, appellant and respondent.

The stockholders are liable to double the amount of stock held

by them for all debts of the bank. The bank was incorporated in 1882 under G. S. 1878, c. 33, containing provision for double liability (G. S. 1894, § 2501) and passed in compliance with Const. art. 9, § 13. Prior to the enactment of Laws 1895, c. 145, the bank had all the powers of a bank of issue. In Anderson v. Seymour, 70 Minn. 358, the court did not pass on the question what is the liability of the stockholders of the bank. Prior to the act of 1895 the stockholders were under double liability. Allen v. Walsh, 25 Minn. 543. Whether this liability was also a constitutional liability depends on the construction of the words "in any corporation and joint association for banking purposes issuing bank notes" in Const. art. 9, § 13, subd. 3. These words mean any corporation that is organized to do a banking business and that has power to issue bank notes, and the liability under the constitution is hence double. It was beyond the power of the legislature to reduce this liability as to a bank so organized and remaining so organized. The legislature had no power to alter the charter of the bank without its assent, and if the law of 1895 is construed as attempting to take away the power to issue notes, to that extent it is unconstitutional. The bank had by its charter the right to issue notes. That right is a franchise granted by the state in the charter. International T. Co. v. American L. & T. Co., 62 Minn. 501, 504. The charter of the bank is an executed contract between the state and the corporation, and the legislature, unless the power of amendment is reserved, cannot repeal, impair, or alter such a charter without the assent of the corporation. Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 700; Miller v. State, 15 Wall. 478. No power to amend the charter was reserved, and the bank never assented to the change. Even if the legislature had the power, it has shown no intention by the law of 1895 to reduce the liability of stockholders in existing banks.

The renewal of certificates of deposit did not operate as payment or discharge of the debts. The certificates of deposit are in legal effect promissory notes. They are not evidence of ordinary deposits, but rather of loans made to the bank. By these certificates "they (the parties) manifest an intention to change the character of the transaction from that of an ordinary deposit to that

of a debt or loan evidenced by an instrument construed to be a promissory note." Mitchell v. Easton, 37 Minn. 335. See also Cassidy v. First Nat. Bank, 30 Minn. 86; Francois v. Lewis, 68 Minn. 409. The new certificates did not operate to pay or discharge the antecedent debt. The fact that the old certificate was surrendered and a new one issued is not material. In either case the certificate is mere evidence of the debt, which remains as before. The rule in a few jurisdictions is that the renewal of a promissory note or other obligation is presumed to discharge the old debt and create a new debt as of the date of the new instrument. Such appears to be the rule in Massachusetts, Maine, Vermont, Indiana and Louisiana. See 2 Daniel, Neg. Inst. § 1259. But that is contrary to the general rule, which is that a simple contract never discharges a precedent debt unless the parties expressly so agree, and the presumption is against such agreement. Geib v. Reynolds, 35 Minn. 331, 335; Good v. Singleton, 39 Minn. 340; Egan v. Fuller, 35 Minn. 515; Combination S. & I. Co. v. St. Paul City Ry. Co., 47 Minn. 207; Washington Slate Co. v. Burdick, 60 Minn. 270; Lambert v. Scandinavian-Am. Bank, 66 Minn. 185; Germania Bank v. Michaud, 62 Minn. 459, 467.

The rule requiring an express agreement supported by strong evidence is not only clearly laid down in Minnesota, but is the settled rule in the United States supreme court and in New York, Wisconsin, Iowa, Indiana, California, West Virginia and other states. Peter v. Beverly, 10 Pet. 532; The Kimball, 3 Wall. 37, 45; The Bird of Paradise, 5 Wall. 545; Segrist v. Crabtree, 131 U. S. 287; The Emily Souder, 17 Wall. 666; Embrey v. Jemison, 131 U. S. 336; Lee v. Hollister, 5 Fed. 752; Downey v. Hicks, 14 How. 240, 249; The Agnes Barton, 26 Fed. 542; Muldon v. Whitlock, 1 Cow. 290; Porter v. Talcott, 1 Cow. 359; Tobey v. Barber, 5 Johns. 68; Jagger v. Walker, 76 N. Y. 521; Board v. Fonda, 77 N. Y. 350; City v. Phelps, 86 N. Y. 484; Blunt v. Walker, 11 Wis. 349; Lindsey v. McClelland, 18 Wis. 505; Matteson v. Ellsworth, 33 Wis. 488; First National v. Case, 63 Wis. 504; Allis v. Meadow, 67 Wis. 16; Willow v. Luger, 102 Wis. 636; Hunt v. Higman, 70 Iowa, 406; Cushwa v. Improvement, 45 W. Va. 490; Dingley v. McDonald, 124 Cal. 90; Merrick v. Boury, 4 Oh. St. 60; Leach v. Church, 15 Oh. St. 169;

Godfrey v. Crisler, 121 Ind. 203; Fry v. Patterson, 49 N. J. L. 612; Bristol v. Probasco, 64 Ind. 406. In the following cases the new obligations were given in exchange or renewals for old obligations, which were surrendered to the debtor, and it was expressly held that the new obligation was not a payment, and that the surrender of the old obligation was not evidence of an agreement that the new obligation paid the old. Peter v. Beverly, supra; Lee v. Hollister, supra; Jagger v. Walker, supra; City v. Phelps, supra; First National v. Case, supra; Allis v. Meadow, supra; Cushwa v. Improvement, supra; Welch v. Allington, 23 Cal. 322; Bristol v. Probasco, supra; Bank v. St. John, 25 Ala. 566; Crocket v. Trotter, 1 Stew. & P. 446; Fry v. Patterson, supra. The rule that renewals are not payment has been applied in several cases where the action was brought to enforce stock liability. Jagger v. Walker, supra; Dingley v. McDonald, supra; Bank v. St. John, supra. See also Bristol v. Probasco, supra; Lee v. Hollister, supra. See also Harper v. Carroll, 66 Minn. 487, where the contention was not made.

The renewal of certificates of deposit after August 1, 1895, did not operate to release the double liability. Defendants to prevail must maintain two propositions: (1) That the extension was without their consent and their want of consent has been affirmatively proved (Harper v. Carroll, supra); (2) that they were sureties. The stockholders must be deemed to have consented to the renewals, particularly as they made no inquiries or objections. They were represented by the corporation and its officers, and acting by them they consented to the renewals. Holland v. Duluth Iron M. & D. Co., 65 Minn. 324, 331. This court has not, as far as we have been able to ascertain, ever adopted the rule of strict construction. National N. H. Bank v. N. W. Guaranty L. Co., 61 Minn. 375. The stock liability is contractual. Hanson v. Davison, 73 Minn. 454. See also Hencke v. Twomey, 58 Minn. 550. The rule sustained by the great weight of authority is that the liability is like that of a partner, original and for the stockholder's own debt, and not that of a surety nor entitled to the peculiar rights of suretyship. Taylor, Corp. §§ 714, 715; 2 Morawetz, Corp. § 879; Richmond v. Irons, 121 U. S. 27, 56; U. S. v. Knox, 102 U. S. 422, 425;

Hobart v. Johnson, 19 Blatch. 359; Witters v. Sowles, 32 Fed. 130; Harger v. McCullough, 2 Denio, 119; Moss v. Averell, 10 N. Y. 449; McVickar v. Jones, 70 Fed. 754; Hatch v. Burroughs, 1 Woods, 439; Coleman v. White, 14 Wis. 762; Schalucky v. Field, 124 Ill. 617, and cases cited; Sonoma v. Hill, 59 Cal. 107; Appeal of Aultman, 98 Pa. St. 505. This court in defining the nature of the stockholder's liability has followed the general rule. Mohr v. Minnesota Ele. Co., 40 Minn. 343; Hanson v. Davison, supra. The rule is uniform that a stockholder is not released from his constitutional or statutory liability by an extension of time of payment of a corporate debt without his consent, except in those few states in which he is held to be merely a surety. Harger v. McCullough, supra; Moss v. Averell, supra; Hobart v. Johnson, supra; Hatch v. Burroughs, supra; Sonoma v. Hill, supra; 3 Thompson, Corp. § 3077; National v. Gay, 57 Conn. 224; McDonnell v. Alabama, 85 Ala. 401.

*Hadley & Armstrong*, for respondents Wilson and Smith.

The stockholders are only liable, in an amount equal to the amount of stock held by them, for the debts of the bank which have accrued since Laws 1895, c. 145, went into effect. The bank was not in 1895 a corporation "issuing bank notes." It does not follow that because the bank was organized in 1882 under G. S. 1878, c. 33, it was organized for the purpose of issuing bank notes, or that it had power to issue them. See Laws 1869, c. 85. It was as much a prerequisite to such power that it should deposit securities as provided in G. S. 1878, c. 33, § 4, as that it should be properly incorporated. Before it deposited such securities it was authorized to do the ordinary deposit and discount business, but not to issue bank notes. Never having made such deposit, it was not only not a bank "issuing bank notes," but it was not a bank authorized or that had the power to issue them. Even if it was so organized that prior to the passage of Laws 1895, c. 145, it might have become a "bank of issue" by depositing securities, it had no such right after the passage. That law repealed the provisions authorizing banks to issue circulating notes. The bank had no contract with the state that it should have power to issue bank notes. See G. S.

1866, c. 33, § 13, as amended (G. S. 1894, § 2493). There is no contract between the state and a corporation by virtue of its charter until the corporation shows its acceptance of the charter. It cannot be said that a bank which has not made such deposit has accepted a charter granting power to issue bank notes. The offer of the state, unaccepted, is not a contract, and the state may withdraw the offer by amending or repealing the statute. Cincinnati v. Clifford, 113 Ind. 460; Matter of N. Y. Cable Ry. Co., 40 Hun, 1; Pearsall v. Great Northern Ry. Co., 161 U. S. 646. The receivers cannot raise the question of the unconstitutionality of Laws 1895, c. 145, on the ground that it impairs the obligation of a contract between the bank and the state. Only a party to the contract can raise the question. Currier v. Elliott, 141 Ind. 394; Sullivan v. Berry, 83 Ky. 198; Hagar v. Reclamation District, 111 U. S. 701–712. This court has already decided that a bank organized under chapter 33, which has not actually issued notes, is not a bank issuing notes. Allen v. Walsh, 25 Minn. 543; Anderson v. Seymour, 70 Minn. 358.

The debts of the bank represented by certificates of deposit issued since August 1, 1895, are not debts that existed prior to that date. These certificates are negotiable paper, and in many respects are governed by the same rules as ordinary promissory notes and bills of exchange. Cassidy v. First Nat. Bank, 30 Minn. 86; Mitchell v. Easton, 37 Minn. 335; Francois v. Lewis, 68 Minn. 409. Whether giving a bill or note operates as absolute or merely as conditional payment of a pre-existing debt depends on the intention of the parties. 2 Daniel, Neg. Inst. § 1259; Leake, Cont. 893. The rule which prevails in England and in many of the states, including Minnesota, is that, where it is shown that a bill or note is given for a pre-existing debt and nothing further appears, the presumption is that it was intended merely as conditional payment, but this presumption may be overcome by proving either an express agreement or an agreement, to be implied from the circumstances, to the contrary. Leake, Cont. 893; 2 Daniel, Neg. Inst. § 1259; Story, Prom. Notes, § 104; Geib v. Reynolds, 35 Minn. 331; Combination S. & I. Co. v. St. Paul C. Ry. Co., 47 Minn. 207; Wiley v. Dean, 67 Minn. 62. It has frequently been inaccurately stated

that the presumption is in favor of conditional payment unless an express contract to the contrary is proved, leaving it to be inferred that such contract cannot be implied from the circumstances. The Kimball, 3 Wall. 37, 45; Lyman v. President, 12 How. 225, 243; Case Mnfg. Co. v. Soxman, 138 U. S. 431; Geib v. Reynolds, supra. The great weight of authority is in favor of the rule applied in Wiley v. Dean, supra, that the presumption of conditional payment may be overcome by showing the intention of the parties from the circumstances surrounding the transaction as well as by proving an express contract. Leake, Cont. 893; 2 Daniel, Neg. Inst. § 1268; Story, Prom. Notes, § 104; Tiedeman, Com. Paper, § 380; Johnson v. Cleaves, 15 N. H. 332; Hart v. Boller, 15 Serg. & R. 162; Belleville v. Bornman, 124 Ill. 200; Macomber v. Macomber (R. I.) 31 Atl. 753; Hotchin v. Secor, 8 Mich. 494; Craddock v. Dwight, 85 Mich. 587; Haines v. Pearce, 41 Md. 221.

Again, a certificate of deposit is more than a promissory note. The certificate is not only evidence of a promise to pay; it is also evidence that the payee has made a deposit, and of its terms (Francois v. Lewis, supra); and it may well be that, even if in the case of an ordinary promissory note the presumption is that it is not intended as satisfaction of the debt, yet there is no such presumption in the case of a certificate of deposit. Manuel v. Mississippi, 2 Pa. St. 198. But, whether or not such a distinction exists, the circumstances here show the intention of the parties that the old contracts were extinguished and that the new certificates should take the place of the old. The fact that the old notes are surrendered is sufficient evidence of payment to allow the question of intention to go to a jury. Hart v. Boller, supra; Cake v. First National, 86 Pa. St. 303; Brown v. Dunckel, 46 Mich. 29; Flower v. Elwood, 66 Ill. 438; Wells v. Robb, 9 Bush, 26; Beach v. Endress, 51 Barb. 570; Chase v. Brundage, 58 Oh. St. 517. The certificate states that a certain amount of money has been deposited as of that date, and it is evident that the parties intended to place themselves in the same relation to each other as if the holder had actually drawn out the cash and redeposited it. Where the circumstances show that parties intend to assume the relation in which they

wou!d be, had they actually passed money back and forth, the law will treat it as having been done. Bank of U. S. v. Bank of Georgia, 10 Wheat. 333; Mayer v. Heidelbach, 123 N. Y. 332.

Another feature tending to show the intention is that it was for the advantage of the holder to surrender his old contract and make a new deposit, for, under the terms of the certificates, they do not draw interest after six months. Again, the holder of the certificate in each instance had his option to take cash if he chose to do so; and, for his own convenience, preferred to take a new certificate. The fact that the bank was open and doing business was in effect an offer to pay cash, and in each instance the person who presented a certificate was asked whether he wanted cash or a new certificate. Where, under such circumstances, a person takes negotiable paper, it is presumed to be in payment and extinguishment of the old debt. Leake, Cont. 894; Benjamin, Sales, § 731; Marsh v. Pedder, 4 Camp. 257; Strong v. Hart, 6 B. & C. 160; Smith v. Ferrand, 7 B. & C. 19; Robinson v. Read, 9 B. & C. 449; Guardians v. Greene, 1 H. & N. 884. Moreover, in every case when the new certificates were dishonored the holders retained them and made their claim against the receivers upon the last certificates. Treating the old debt as extinguished, subsequently to the transaction, has been held to be evidence of the intention of the parties at the time. Strong v. Hart, supra; Hotchin v. Secor, supra.

Even conceding, for the purposes of argument, that the taking of new certificates since August 1, 1895, in lieu of the old ones of prior date, merely extended the time of payment of the original debt; still this extension was made without the consent of the stockholders, and thereby they were released from their liability to pay the second amount equal to the amount of their stock. The liability of a stockholder in addition to the stock itself is that of a guarantor or surety, the corporation being the principal debtor and primarily liable. The liability of stockholders rests upon G. S. 1894, § 2501. This section must be read in connection with chapter 76, which provides how this liability of stockholders may be enforced (sections 5905–5907, 5909–5911). These sections, as construed, provide that this liability can only be enforced in case the corporation is insolvent, and only for the amount of indebtedness

remaining after exhausting the assets of the bank; and it must be enforced by a suit for the benefit of all creditors. Laws 1895, c. 145, has been construed to mean that the receiver may enforce the liability in accordance with the provisions of G. S. 1894, c. 76. Ueland v. Haugan, 70 Minn. 349; Anderson v. Seymour, 70 Minn. 358. Section 2501 and chapter 76 were enacted at the same time and must be construed together. Allen v. Walsh, 25 Minn. 543; Hanson v. Davison, 73 Minn. 454; Willis v. Mabon, 48 Minn. 140. The stockholders are only liable for the debts of the corporation after exhausting the property of the corporation itself. Harper v. Carroll, 66 Minn. 487, 498; Minneapolis Paper Co. v. Swinburne P. Co., 66 Minn. 378. The liability of the stockholder is that of a surety. Hanson v. Donkersley, 37 Mich. 184; Wright v. McCormack, 17 Oh. St. 86; Patterson v. Wyomissing, 40 Pa. St. 117; Perry v. Turner, 55 Mo. 418; Malloy v. Mallett, 6 Jones, Eq. (N. C.) 345; Southmayd v. Russ, 3 Conn. 52; Ball v. Child, 68 Conn. 522; Moss v. McCullough, 5 Hill, 131; Close v. Potter, 155 N. Y. 145, 155; Hicks v. Burns, 38 N. H. 141.

Even if the relation of the stockholder to the creditor is that of principal debtor, and his liability is primary and not secondary, yet he is released by the creditor giving time to the corporation without his consent. In case two persons are jointly liable as principals to a third, but by some agreement one is bound to pay the whole debt, and the creditor knowing this fact grants an extension of time to one debtor, without consent of the codebtor, the creditor thereby releases such codebtor. Hubbard v. Gurney, 64 N. Y. 457. To the same effect are: Lime Rock v. Mallett, 34 Me. 547, 42 Me. 349; Piper v. Newcomer, 25 Iowa, 221; Riley v. Gregg, 16 Wis. 697; Bank v. Smith, 30 Vt. 148; Brandt, Sur. § 17; Leake, Cont. 463; Agnew v. Merritt, 10 Minn. 242 (308). See further: Millerd v. Thorn, 56 N. Y. 402; Colgrove v. Tallman, 67 N. Y. 95; Palmer v. Purdy, 83 N. Y. 144; Travers v. Dorr, 60 Minn. 173; Calvo v. Davies, 73 N. Y. 211; Harger v. McCullough, 2 Denio, 119.

*Davis, Kellogg & Severance,* for defendants, appellant and respondent.

*Charles J. Berryhill,* respondent, pro se.

LOVELY, J.

Plaintiffs were appointed by the district court of Ramsey county receivers of the insolvent Bank of Minnesota, a banking institution incorporated under the laws of this state. Its assets are insufficient to meet its obligations, and this action is brought by the receivers to enforce the individual liability of the stockholders, under Laws 1895, c. 145.

The plaintiffs claim the right to enforce against each of such stockholders a liability for double the amount of his holdings of stock, which, by reason of the insolvency of many stockholders, and the deficiency of assets, is claimed to be necessary to secure payment of its debts. The defendants resist the enforcement of the double liability, and contend that all but a limited amount of the indebtedness was actually incurred after the provisions of chapter 145 took effect, and that the liability of the stockholders is reduced by the terms of that act from a double to a single liability; and this, as we view it, is the real contention in this case.

It was not disputed that, if the statute referred to in all respects applied, it did reduce the liability of the stockholders as claimed; but it was urged by counsel for receivers on the trial below, as well as in this court, that certain provisions of this statute did not control this question, but were in violation of section 13, article 9, of the state constitution, which left the previous enactment (G. S. 1894, § 2501), providing for a double liability in such cases, in full force. It is also a serious contention by the receivers that a large part of the indebtedness of the bank, amounting to over $533,000, represented by certificates of deposit allowed and found as claims, were renewals of other certificates that had been issued before August 1, 1895, and that for such reason the liability of the stockholders was not changed by the renewals from a double to a single liability. Upon both of these questions the trial court held adversely to the receivers, and ordered judgment against the stockholders for the indebtedness mentioned above, only for an amount equal to the holdings of each stockholder, which judgment was duly entered. In the judgment it was also ordered that to the extent of $27,000, in round numbers (being indebtedness which accrued previous to August 1, 1895, when the single-liability statute

went into effect), the stockholders were liable in double the amount of their shares.

Both parties have appealed from the judgment to this court, and, in the view which we take of the legal issues presented by the respective appeals, there are three propositions before us for our determination, viz.:

1. Was the act of 1895 constitutionally operative upon the previous double-liability provisions of the banking law of this state?

2. Was the conclusion of the trial court, to the effect that the renewal certificates constituted new obligations subsequent to the act of 1895, supported by the evidence?

3. Was the portion (about $2,000) of the $27,000 indebtedness which accrued between the passage of the act of 1895 and the time when it took effect by its terms a claim that could be enforced against the stockholders under the single or double liability act referred to?

1. The theory of the receivers is that the Bank of Minnesota, which was organized in 1882, under chapter 33 of the general statutes, was a bank of issue, having a right to put forth its bank notes, and, although it never had in fact exercised that power, it was authorized to do so, and by the provisions of the constitution (article 9, § 13, subd. 3), which imposed a double liability upon its stockholders, it was in terms declared that the general banking law to be provided for thereunder should apply only to banks "issuing bank notes," whose stockholders should be "individually liable in an amount equal to double the amount of stock owned by them for all the debts of such corporation or association"; and the question here on this contention simply is whether the provisions of Laws 1895, c. 145, in reducing the stockholders' liability, conflict with this constitutional restriction.

The answer to this question concededly turns upon the effect to be given to the words restricting the liability clause in the constitution to banks "issuing bank notes"; for the organic law does not apply in such restriction to banks of discount and deposit, and if the Bank of Minnesota was not a bank of issue, or its right to issue bank notes was taken from it, the later act upon the subject repealed the former, or those provisions thereof which were incon-

sistent with it. It is a matter of common knowledge, of which this court will take notice, that neither the Bank of Minnesota nor any other bank in this state has issued bank notes since the establishment of the national banking system, and the tax imposed thereby upon the circulation of bank bills as currency; and the Bank of Minnesota at no time since its organization has been a bank, within the literal terms of the organic law, "issuing bank notes." But it is urged that it might, having the power to exercise this privilege, break the ban, and by issuing its notes exercise that right, for the purpose of asserting its constitutional authority, and creating a subsequent liability thereby. We think that this is probably true, unless by the terms of the act of 1895 the power to issue bank notes has been, by necessary implication, withdrawn and revoked.

By the act of 1895 the banking laws of this state are carefully revised, and it is provided by section 1 of that statute that the banks to be thereafter established shall be banks of "discount and deposit,"—not authorizing in any of its provisions, either in terms or impliedly, a right to issue bank notes; and it is further provided in section 29 thereof that

"The powers, privileges, duties, and restrictions conferred and imposed upon any bank existing and doing business under the laws of this state are hereby abridged, enlarged, or modified, as each particular case may require, to conform to the provisions of this act."

To give proper scope and effect to this last provision, it must be held to abridge the power to issue bank notes conferred by the law under which the Bank of Minnesota was organized; and the question still follows, does such change restrict the charter or acts of incorporation under which the Bank of Minnesota was incorporated? It may be conceded, for the purpose of argument, that, if the power to issue bank notes had been exercised by the bank, it would not have been within the constitutional authority of the state to abridge or withdraw that right; but we do not think it can be held, upon sound principles of public policy, that an unused power, depending upon legislative sanction, when no contractual relations have been imposed, creates such a vested privilege that it

cannot be withdrawn by the authority from which it emanated; and when, by the terms of Laws 1895, c. 145, the power to issue bills was withdrawn, the Bank of Minnesota became only a bank of discount and deposit, not controlled by the constitutional restriction referred to, but subject to legislative control; and it follows that its stockholders' liability might be regulated, reduced, or increased thereby. Allen v. Walsh, 25 Minn. 543, 548.

The right to regulate the banking institutions of the state yields in importance to no other subject of legal control, for the interests involved are vast in their magnitude; they touch every enterprise and reach every hearthstone; and, in view of the varied and extensive interests concerned, there is no other object of state regulation which calls for a more ample exercise of legislative guardianship, or is better justified by the dictates of reason or sound public policy. In view of these large considerations of public importance, we are of the opinion that it was competent for the legislature to revoke the unused authority of the banks in this state to issue their notes for circulation; and that such was the effect of Laws 1895, c. 145, we have no doubt. This conclusion is supported in principle by the high authority of the supreme court of the United States. Pearsall v. Great Northern Ry. Co., 161 U. S. 646, 16 Sup. Ct. 705; Louisville & N. R. Co. v. Kentucky, 161 U. S. 677, 16 Sup. Ct. 714.

We have stated our views upon this portion of the case the more fully out of respect for the contention of the able counsel for the receivers, who insist with much force and learning that this is still an open question; but we are satisfied that this controversy has already been considered by this court, and that a careful review of the arguments and opinions in a recent case where these receivers were parties will show that the trial court was right in resting its decision upon the rule of stare decisis. Anderson v. Seymour, 70 Minn. 358, 73 N. W. 171.

2. The trial court held that, of .the large indebtedness of the bank, $533,300.53 represented the amount of certificates of deposit which were renewals of other certificates outstanding prior to August 1, 1895, and that with reference to such certificates renewed after .that date, when the stockholders' liability was reduced, there

was an "unconditional surrender" by each holder, "and the acceptance by him of a new certificate, without other circumstances showing an intent that the old contract should remain in force, which creates a new and independent contract," and ordered judgment for an amount equal only to the face value of such obligations.

The evidence to support this conclusion of the court below shows that the bank was at the time of the renewals open, apparently solvent, and doing business according to the usual custom of banks; that when the old certificates, which were obligations bearing interest for six months, were presented, by their terms they ceased to bear interest; that the holders were given the option to have their money, but that they chose to take new certificates, which bore interest for six months longer. In many cases a part was paid, or the interest only, according to the choice of the holder. In view of the "common understanding" in such cases, the court held that the new certificates evidenced a new contract, upon which the rights of their owners must be based; and the owners themselves, in filing their claims, seem to have adopted that view at the trial, since such claims were rested upon the certificates issued after August 1, 1895. We think the evidence in this respect is sufficient to sustain the conclusion reached by the court below.

It is urged, upon the analogy supposed to exist between such certificates and negotiable notes between private parties, that the rule has been established that the giving of a new note does not, without express agreement, discharge the old obligation, which is the law of this state. Geib v. Reynolds, 35 Minn. 331, 335, 28 N. W. 923. But this analogy is more seeming than real, and the parallel ends with the reason for the rule, which is that, in the case of transactions between individuals, new notes for the old debts are mere extensions for the benefit of the debtor solely, and by favor of the creditor; and, in the cases on this subject in this court where the rule has been applied, it has been held that a new note may be received as a payment, or, to adopt the language of the learned trial judge, as an "independent contract," if such is the intention of the parties, and that the intention which controls in that respect is to

be drawn from the evidence consisting of the circumstances of each case. Keough v. McNitt, 6 Minn. 357 (513); Goenen v. Schroeder, 18 Minn. 51 (66); Geib v. Reynolds, supra; Combination S. & I. Co. v. St. Paul City Ry. Co., 47 Minn. 207, 49 N. W. 744; Hanson v. Tarbox, 47 Minn. 433, 50 N. W. 474; Wiley v. Dean, 67 Minn. 62, 69 N. W. 629.

And it would seem to follow, when the reason for the rule referred to is considered, as well as the circumstances that entered into the transactions of the bank with its certificate holders, that the court would not have been justified in going behind the face of the certificates themselves; for, when such certificate was presented at its counter, the bank was ready in each case to pay it in money, and if the certificate had been presented, properly indorsed, by a mute, without a word, the teller would either have counted out the funds to take it up, or committed an act of insolvency for the bank; or if the certificate holder had taken his money and gone to another bank, and taken a new certificate there, or if at the same bank he had taken his money from the teller, and again returned it for a new certificate, there would be no question as to the nature of such a transaction. Concededly, they would constitute new and independent contracts. And we think this is precisely what the certificate holders, with their option to take the money or reloan it for new interest, which they would not have had if the certificates had not been renewed, did, although it was done by a business "short cut," which implies all that the court below found to be within the "common understanding" prevalent in such cases; and we think, in this respect, the judgment must be sustained.

3. Upon the cross appeal of the stockholders, the claim is made that of the certificate indebtedness which had not been renewed prior to August 1, 1895, amounting to over $27,000, in round numbers, some $2,000 of such certificates were issued after the act was approved (April 15, 1895), but before the day when by its terms it was to take effect (August 1 of same year). The trial court held that upon all certificates issued before the statute took effect the liability of the stockholders was double, as if Laws 1895, c. 145, had not been passed. We think that in this respect the trial court was

79 M.—15

clearly right. It is true that such creditors entered into their contracts with the bank after the act of 1895 had been approved, and had full notice that it would go into effect on August 1 thereafter; and it is urged for that reason that the act reducing the stockholders' liability became a part of all contracts entered into with the bank in the meantime. This is plausible, but not satisfactory; for the controlling fact still remains that by the laws of the state in force when the contract was made, and which necessarily became a part thereof, the stockholders were liable for the debts of the corporation in a sum double the amount of the par value of the stock holdings of each.

The judgment of the court below is affirmed.